# United States Court of Appeals
# for the Federal Circuit

---

**SYSTEM FUELS, INC., SYSTEM ENERGY RESOURCES, INC., SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5094

---

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00511-SGB, Judge Susan G. Braden.

-----------------------------------------------------------------------

**SYSTEM FUELS, INC., ENTERGY ARKANSAS, INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5095

_____

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00389-CFL, Judge Charles F. Lettow.

_____

Decided: April 4, 2016

_____

ALEXANDER D. TOMASZCZUK, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, argued for plaintiffs-appellants. Also represented by CLARE M. CAVALIERO, JAY E. SILBERG, Washington, DC; LAYTON JAGER SMITH, JR., Jager Smith LLC, Jackson, MS.

ERIC PETER BRUSKIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHRISTOPHER JAMES CARNEY, JAMES PATRICK CONNOR, BRYANT G. SNEE, ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER.

_____

Before MOORE, MAYER, and WALLACH, *Circuit Judges.*

MOORE, *Circuit Judge.*

In these related appeals, System Fuels, Inc., System Energy Resources, Inc., South Mississippi Electric Power Association, and Entergy Arkansas, Inc. (collectively, "System Fuels") appeal two judgments of the Court of Federal Claims denying one category of damages arising

from the government's partial breach of contract. We reverse and remand both cases.[1]

BACKGROUND

These cases are another round of litigation following the government's failure to accept and dispose of spent nuclear fuel (or "SNF"). The general facts and circumstances regarding spent nuclear fuel cases have been explained in both Court of Federal Claims opinions below and in opinions from this and other courts. *See, e.g., Energy Nw. v. United States*, 641 F.3d 1300, 1302–03 (Fed. Cir. 2011); *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1371–72 (Fed. Cir. 2005); *Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337–40 (Fed. Cir. 2000); *Ind. Mich. Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1273–74 (D.C. Cir. 1996). Thus, we limit our discussion to only those facts necessary to understand the issues giving rise to these appeals.

In the Nuclear Waste Policy Act of 1982, Congress authorized the Department of Energy ("DOE") to contract with nuclear power utilities as part of its plan for a national nuclear waste disposal system. *See* 42 U.S.C. §§ 10131, 10222; *see generally Energy Nw.*, 641 F.3d at

---

[1] We note that the two cases on appeal decide the damages issue regarding entitlement to loading storage casks differently. And the parties have brought to the court's attention at least two other recent decisions also from the Court of Federal Claims on the same issue. *Entergy Nuclear Fitzpatrick, LLC v. United States*, No. 03-2627C, 2015 WL 9025699 (Fed. Cl. Dec. 15, 2015) (unpublished); *System Fuels, Inc. v. United States*, No. 03-2621C, 2016 WL 537617 (Fed. Cl. Feb. 10, 2016). It can be fairly stated that the four decisions each reach different results on the same issue, entitlement to damages for storage cask loading fees.

1302–03; *Ind. Mich. Power*, 422 F.3d at 1371–72. Congress set forth the contracts' basic terms, requiring the utilities to pay fees into a Nuclear Waste Fund in return for the government taking title to and disposing of the utilities' spent nuclear fuel beginning no later than January 31, 1998. 42 U.S.C. § 10222; *Energy Nw.*, 641 F.3d at 1302. Pursuant to Congress' instruction, the DOE promulgated regulations defining the text of the standard contract for use with the utilities. *Energy Nw.*, 641 F.3d at 1302; Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 10 C.F.R. § 961.11 ("Standard Contract").

Under the Standard Contract the utilities are responsible for providing "all preparation, packaging, required inspections, and loading activities necessary for the transportation of [spent nuclear fuel] and/or [high-level radioactive waste] to the DOE facility." 10 C.F.R. § 961.11. The government is responsible for "arrang[ing] for, and provid[ing], a cask(s) and all necessary transportation of the [spent nuclear fuel] and/or [high-level radioactive waste] from the [utility's] site to the DOE facility." *Id.* The Standard Contract also requires that the casks supplied by the DOE "shall be suitable for use at the [utility's] site, meet applicable regulatory requirements, and be accompanied by pertinent information." *Id.*

In 1983, System Fuels and the government executed the Standard Contracts at issue in these appeals, which relate to spent nuclear fuel generated at the Grand Gulf (appeal No. 2015-5094) and the Arkansas Nuclear One (appeal No. 2015-5095) power stations. In 1994, the government announced that it would not be able to accept spent nuclear fuel from any utility by the statutory and contractual deadline of January 31, 1998. Waste Acceptance Issues, 59 Fed. Reg. 27,007 (Dep't of Energy May 25, 1994). The government explained that the then-current projection for the earliest possible date it could begin accepting spent nuclear fuel was 2010. *Id.* at

27,008.  The government did not meet its 2010 projection and, in fact, has yet to begin accepting any spent nuclear fuel.[2]  It is undisputed that the government's failure to accept spent nuclear fuel at this point in time is a partial breach of the Standard Contract.

System Fuels filed their first complaints seeking damages for the government's partial breach in 2003 (Arkansas Nuclear One) and 2005 (Grand Gulf).  The Court of Federal Claims ultimately awarded System Fuels damages for costs incurred through August 31, 2005 (Grand Gulf) and June 30, 2006 (Arkansas Nuclear One).  These awards included, *inter alia*, the costs System Fuels incurred to construct Independent Spent Fuel Storage Installations ("ISFSIs") at Grand Gulf and Arkansas Nuclear One to store spent nuclear fuel in dry storage casks that it would not have had to store had the government begun performing on time.

The decisions currently appealed arise from new complaints System Fuels filed seeking damages for costs incurred due to the government's continued partial breach covering the periods of September 1, 2005 to July 31, 2011 (Grand Gulf) and July 1, 2006 to June 30, 2012 (Arkansas Nuclear One) (collectively, "new damages periods").  Before the Court of Federal Claims, the government did not dispute that System Fuels was entitled to most of the damages it claimed for the new damages periods.[3]  And

---

[2]  At oral argument, System Fuels' counsel stated that the current, speculative projection is that the government will begin performance in 2048, although the government believes that other projections may have performance beginning sooner.  Oral Argument at 3:30–40, 29:15–24, *available at* http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2015-5094.mp3.

[3]  These undisputed amounts are $44,414,139 (Grand Gulf) and $29,370,717 (Arkansas Nuclear One).

the government does not appeal any of the Court of Federal Claims' damages awards that are adverse to it. Rather, System Fuels appeals the Court of Federal Claims' denial of damages for one category of costs: the costs incurred to load spent nuclear fuel into storage casks stored at the Grand Gulf and Arkansas Nuclear One ISFSIs. At both sites, System Fuels incurred costs when it loaded spent nuclear fuel into Holtec (Grand Gulf) or Holtec and VSC–24 (Arkansas Nuclear One) storage systems. This process involved first loading the spent nuclear fuel into canisters, then loading those canisters into the dry fuel storage casks and welding the casks closed. System Fuels argues that these costs, the costs of loading storage casks, are *storage costs* that it would not have incurred if the government had performed. We have jurisdiction over these appeals under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Court of Federal Claims decisions de novo for errors of law and for clear error on findings of fact. *Ind. Mich. Power*, 422 F.3d at 1373. "A finding may be held clearly erroneous when the appellate court is left with a definite and firm conviction that a mistake has been made." *Id.* (alterations and citation omitted). Whether a breach of contract caused certain damages is a fact question reviewed for clear error. *See Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1356 (Fed. Cir. 2001).

---

For reference, the Court of Federal Claims found in the Arkansas Nuclear One case that System Fuels "has fully performed its obligations under the Standard Contract" and, as of the end of the new damages period, has paid $344 million into the Nuclear Waste Fund. *System Fuels, Inc. v. United States*, 120 Fed. Cl. 737, 741 (2015) ("*Arkansas Nuclear One*").

In the cases currently appealed, the Court of Federal Claims took two different approaches in denying damages for the costs incurred by System Fuels in loading spent nuclear fuel into storage casks.  In the Grand Gulf case, the Court of Federal Claims denied System Fuels the entire claimed amount of $4,706,387 because it determined that System Fuels "failed to establish the projected costs of preparing and packaging [spent nuclear fuel] for dry storage in DOE casks." *System Fuels, Inc. v. United States*, 120 Fed. Cl. 635, 661 (2015) ("*Grand Gulf*").  The court noted that System Fuels acknowledged that it would have incurred costs, although at a lesser expense, to load the DOE casks had the DOE performed.  It also stated that it "may not consider the possible future costs [System Fuels] may incur to repackage the [spent nuclear fuel] in DOE casks, if and when DOE performs." *Id.*  The court made these findings despite noting System Fuels' argument that, under the current regulations regarding transport of radioactive material and the terms of the Standard Contract, the DOE will not accept canistered fuel as stored by System Fuels at Grand Gulf. *Id.* at 660–61.  Thus, under the current regulations and contract, System Fuels will have to unload the spent nuclear fuel from the storage casks and canisters and reload it into the DOE-supplied transportation casks if and when the DOE performs.

In the Arkansas Nuclear One case, the Court of Federal Claims found that the government will not accept canistered spent nuclear fuel as stored by System Fuels at Arkansas Nuclear One under the current terms of the Standard Contract. *Arkansas Nuclear One*, 120 Fed. Cl. at 749.  Quoting the testimony from Mr. Zabransky, the Director of the Office of Standard Contract Management at the DOE, the court found that "[a]bsent an amendment to the Standard Contract, 'canistered fuel would need to be unloaded from the canister and repackaged in a transportation cask for acceptance.'" *Id.* (alterations omitted).

Finding that the Standard Contract had not been amended and it was unknown what amendments would be necessary in order for the DOE to accept canistered fuel, the court concluded that "[a]s matters now stand, all of the [spent nuclear fuel] at [Arkansas Nuclear One's ISFSI] will have to be extracted and then reloaded for transport by DOE." *Id.* The court also found that about one third of the storage casks contained a particular type of fuel (i.e., "high burn-up fuel"), which cannot be transported in the Holtec casks under the current regulations regarding transport of radioactive material. *Id.* (citing 10 C.F.R. pt. 71). Nevertheless, the court did not award System Fuels all of its claimed $6,475,497 in damages. Rather, in order to determine the amount of disallowed costs, the court subtracted from the claimed total the costs to which System Fuels was allowed: 1) all the costs to load the high burn-up fuel; 2) the costs to load the canisters containing non-high burn-up fuel into the storage casks (but not the costs to load this fuel into the canisters); and 3) an amount accounting for the higher cost to close welded, as opposed to bolted, casks. It thus granted System Fuels $4,532,848 in damages and denied the remainder ($1,942,649).

Before the Court of Federal Claims and on appeal, System Fuels argues that the government's breach caused it to incur costs to load spent nuclear fuel into dry storage casks that it then stored at its ISFSIs. It argues that, but for the government's partial breach, it would not have had to load *storage casks* at all, such that its costs to load storage casks in the non-breach world would have been zero. Rather, it states that under the Standard Contracts it is responsible for costs incurred for loading the DOE-supplied *transportation casks* and argues that it will incur costs to load transportation casks when the government ultimately performs. As explained above, loading the storage casks used by System Fuels involves first loading the spent nuclear fuel into canisters and then loading

those canisters into the storage casks. System Fuels argues that, given the DOE's unequivocal statement that it will not accept the currently loaded canisters (that are within the storage casks) or the storage casks themselves under the existing Standard Contracts, it will undisputedly incur costs to unload the spent nuclear fuel from the storage casks and canisters and to reload that fuel into the DOE-supplied transportation casks in the future when the DOE performs. Thus, System Fuels argues that it is entitled to all of the costs of loading these *storage* casks.

We agree with System Fuels that the Court of Federal Claims clearly erred in both decisions when it denied damages for costs incurred to load the storage casks and/or canisters, regardless of the type of fuel loaded. The record in both cases indicates that under the existing Standard Contracts, the DOE cannot accept for transport any of the canistered fuel as is, such that System Fuels will incur costs to unload this fuel from the storage casks and canisters and to reload it into transportation casks if and when the DOE performs. Indeed, the Court of Federal Claims in the Arkansas Nuclear One case found this very fact. *Arkansas Nuclear One*, 120 Fed. Cl. at 749. And in *Grand Gulf* as well the court quoted the government's position: "DOE's position is that it will not accept canistered SNF, such as the SNF that is in dry storage at Grand Gulf, under the Standard Contract unless there is an amendment to the Standard Contract, the terms of which DOE has not defined." *Grand Gulf*, 120 Fed. Cl. at 660. In *Grand Gulf*, the Court of Federal Claims also acknowledged that under the current regulations, the storage casks in which the high burn-up fuel is stored cannot be used for transportation of that fuel. *Id.* The court went on to find: "That will require Plaintiffs to prepare and package SNF, if and when DOE performs, unless [the relevant] . . . regulations are changed." *Id.* In light of these fact findings made in both Court of Federal

Claims decisions, namely that the storage casks used by System Fuels may not be used for transportation, System Fuels was entitled under the law to all of the costs of loading these storage casks. The Court of Federal Claims thus erred in both cases by denying System Fuels damages based on alleged failures to prove how the costs to load the storage casks and canisters differ from the costs it would have incurred in loading the DOE-supplied transportation casks. Such an analysis assumes that the government will accept the canistered fuel as is when the government performs in the future—an assumption that is wholly unsupported by the present record. System Fuels is obligated under the Standard Contracts to load the government-provided *transportation* casks. It is undisputed that under the Standard Contracts, the government will not allow the *storage* casks used by System Fuels to be used as *transportation* casks. Thus, the costs of loading future transportation casks, or the difference between the costs of loading these storage casks and loading transportation casks, are irrelevant to System Fuels' entitlement to the expenses it incurred for loading these *storage* casks. These are expenses incurred entirely for storage due to the government's breach. And because, as admitted by the government, these storage casks cannot be used for transportation under the Standard Contracts, System Fuels will be required, if and when the government begins to comply, as both Court of Federal Claims decisions acknowledge, to unload the spent nuclear fuel from these storage casks and reload it into suitable transportation casks provided by the government. As we have explained, "the government cannot prematurely claim a payment that has not become due." *Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1277 (Fed. Cir. 2009) (quoting *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1281 (Fed. Cir. 2008)).

Loading into transportation casks, the parties agree, is an expense that must be incurred by System Fuels. That is not the expense for which they seek damages today.[4] The government argues that, while it is true that the storage casks loaded by System Fuels may not under the current Standard Contracts be used for transportation, it is possible that the Standard Contracts could be modified in the future such that these storage casks may be deemed suitable for transportation. Such speculation about what might happen is not sufficient to preclude the damages for which System Fuels has proven entitlement. Cases are decided on the facts of record, not a set of facts that may come into being in the future.

## CONCLUSION

For the foregoing reasons, we reverse the Court of Federal Claims' denial of damages for the costs incurred by System Fuels in loading spent nuclear fuel into storage casks in both the Grand Gulf and Arkansas Nuclear One cases. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

## COSTS

Costs to System Fuels.

---

[4] System Fuels also argues that regulations prevented transportation of certain types of fuel which it is storing (high burn-up fuel). Because it prevails in light of the state of the record which precludes transportation in the storage casks under the Standard Contracts, we need not address its additional argument related to regulatory prohibitions on transporting some of the fuel at issue in the casks at issue.